1   SMAHA LAW GROUP
2      John L. Smaha, Esq., CA Bar 95855
       Gustavo E. Bravo, Esq. CA Bar 218752
3      John Paul Teague, Esq. CA Bar 254249
4   7860 Mission Center Court, Ste. 100
    San Diego, CA 92108
5   T: (619) 688-1557/F: (619) 688-1558

6
    Attorneys for Debtor, SARGENT RANCH, LLC
7
    AFFELD GRIVAKES ZUCKER LLP
8      David Affeld, CA Bar 123922
9      Christopher Grivakes, CA Bar 127994
       Gregg Zucker, CA Bar 166692
10  12400 Wilshire Blvd., Ste 1180
    Los Angeles, CA 90025
11  T: (310) 979-8700/F. (310) 979-8701

12
    Special Litigation Counsel for Plaintiff,
13  SARGENT RANCH, LLC

14
15              UNITED STATES BANKRUPTCY COURT

16              SOUTHERN DISTRICT OF CALIFORNIA

17
18  In re:  SARGENT RANCH, LLC,              BK- 10-00046-PB11
                                             CHAPTER 11
19          Debtor,
                                             ADVERSARY NO:
20  ─────────────────────────────────
21  Sargent Ranch, LLC                       COMPLAINT FOR RESCISSION, DAMAGES,
                                             PUNITIVE DAMAGES, DISGORGEMENT,
22          Plaintiff,                        INJUNCTIVE RELIEF, DECLARATORY
                                             RELIEF:
23  vs.                                        1.    VIOLATIONS OF REAL ESTATE
24                                                   MULTI-LENDER LAWS (B&P
    First Blackhawk Financial Corp., a              Code §10238(f)(1)
25  corporation, Albert J. Kralik and Linda H.     2.    VIOLATIONS OF SECURITIES
    Kralik, Albert J. Kralik, Trustee, Athena            LAWS (Corp. Code §25501.5)
26  Coast Holdings Limited, Avilla Thompson,   3.    VIOLATIONS OF CIVIL CODE
    Barbara L. Jones, Bernat Rosner, Bradley D.         §1671
27  Benson, Bruce K. Palmer, Trustee, Burton    4.    EQUITABLE SUBORDINATION
28

─────────────────────────────────────────────────────
                              -1-
                                                    COMPLAINT

Orville Benson, Carr Capital Partners LLC, de Groot Charitable Remainder Trust, Debra Gewertz, Discount Fabrics Profit Sharing Plan, Donald C. Drennan, Elizabeth A. Doerr-Black, Elizabeth Benson, Enderley, Ltd., ERG - BOB Retirement Trust, ERG - Ford Retirement Trust, ERG, Inc. (ERG Materials & Aerospace Corp.), Eric B. Benson, Ethel M. Blake, Trust, First Trust Corp. Trustee FBO/Bussey, Frederic Sylvester, Trustee, Frederick Bussey, Fredrick H. and Jacqueline  Badger, Trustees, Gary F. Griffin, Trustee, Gary F. Jones, Gibbs Hill Insurance Co., Goldfinger Investments, Ltd., Gregory F. Griffin, Gunilla M. Rittenhouse, Gunther J. and Kathryn L. de Groot, Trustees, Ian G. and Tonya A. Koblick, Co-Trustees, Jim Schreader, Jocelyn Sylvester Herail, Trustee, Kenneth I. (deceased) and Paulina P. McGill, Kurt M. Pagnini, Lee and Francesca Wolterding, Linkup Holdings Limited, Los Amigos V, Louis E. Rittenhouse, Trustee, Martin H. Plone, Mark D. Benson, Mark and Linda Ragno, Martin A. and Laurie Parese, Jr., Mary B. Wilson, Trustee, Mary Marbury Bowie, Michael C.S. Thompson, Trustee, Michael E. and Janice L. Pegler, Montgomery Street Partners, Nailder Investments Ltd/Basel Trust Ltd, Nerine Trust Company Limited, New Process Industries, Inc., Norman I. Adams, IV, Patricia Bussey, Patricia J Bussey, Trustee, Paul Pagnini, Trustee, Paulina Pulliam McGill, Porter A Hurt, Trustee, Rawson Investments Ltd., Ricardo Pimienta, Richard R. Bruce & Susan I. Bruce, Trustees, Richard Ehrenberger, Richard G Williams, Ronald C & Catherine M Blake, Ronald P

(Bankruptcy Code §510)
5.   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
6.   BREACH OF FIDUCIARY DUTY
7.   BREACH OF CONTRACT
8.   FRAUD
9.   CONVERSION
10.  NEGLIGENCE
11.  DECLARATORY RELIEF
12.  SET-OFF

DEMAND FOR JURY TRIAL

-2-

COMPLAINT

Elvidge, Russell A  and Vivien G. Bowen, Trustees, Shazara Services Ltd., Sherie Sylvester, Trustee, Steve and Lynn Mirassou, Trustees, Steven S and Kathryn A. Hallock, Co-Trustees, Susan Ragno, The Russell A & Vivien G Bowen Trust, Thomas R. Leonard, Thomas W and Ginger C. Marckwardt, Trustees, Trust Company of America, V. Lea Sasak, Victoria L. Sillivan, Trustee, W. Richard Marz and Ruthanne Marz, William E and Alayne L. Noble, Trustees, William E. Noble, William Mazzocco, Trustee, William R & Marie A Smithousen, Trustees, World Health Associates,Inc., Cavalier Corp., Arthur Appleton, Jeff Appleton, Estate of John S. Appleton, Deborah S. Appleton, Associated Management Services, Inc., PENSCO Trust Company, Inc., Dave Wallace,  and DOES 1 through 100, inclusive,

      Defendants.

_____

## SUMMARY

1.     This case arises out of an illegal and fraudulent scheme by mortgage broker First Blackhawk Financial Corporation ("FBF") with respect to a series of syndicated loans (the "Loans") sold to over 100 lenders in the collective principal amount of approximately $46 million. The Loans were purportedly for Plaintiff's benefit, and were secured by deeds of trust on 6,400 acres of real estate (the "Property") owned by Plaintiff.

2.     FBF sold the Loans and deeds of trust in deliberate violation of (a) real estate multi-lender laws which limit the sale of a series of notes to 10 fractionalized interest owners, (b) securities laws which prohibit unlicensed broker-dealer transactions,

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 3 of 29

(c) a Desist and Refrain Order from the Department of Real Estate expressly prohibiting FBF from selling notes secured by deeds of trust on the Property, and (d) Civil Code §1671 which prohibits unlawful penalties disguised as default interest provisions. In short, the Loans and deeds of trust were illegal transactions in violation of express laws, and are thus null and void as a matter of law.

3. FBF and its agents misappropriated untold millions from the Loan proceeds. FBF was able to misappropriate funds because it had full and complete control of the Loan proceeds (Plaintiff did not even maintain its own bank account). FBF implemented its scheme by, among other things, recording false deeds of trust. For example, FBF is the record owner of a 63.33% interest in a $15 million deed of trust despite not having loaned any money entitling it to any security interest. FBF and its principals thereafter sold fractionalized interests from FBF's purported 63.33% ownership interest, and used loan proceeds for their own benefit and not for the benefit of Plaintiff. FBF then destroyed the vast majority of the books and records relating to the Loans.

4. Many of the lenders, if not all of them, were apprised that the Loans were illegal, and conspired with and/or aided and abetted FBF's violations by knowingly entering into illegal Loans. The lenders also breached the implied covenant of good faith and fair dealing in the Loans by refusing to allow Plaintiff to sell or refinance portions of the Property to pay down the Loans. The lenders' strategy was to implement a "loan to own" scheme, *i.e.*, by running up huge interest obligations at punitive rates which Plaintiff could not repay, they could foreclose (or force a bankruptcy and seek liquidation) and thus become owners of the Property.

## JURISDICTION AND VENUE

5. In January 2010, Sargent Ranch filed a voluntary petition for relief under Title 11 of the United States Code in the United States Bankruptcy Court for the District of Southern California, Case No. 10-00046-PB11 (the "Main Case"). The Main Case remains pending in that Court. The present action is a civil proceeding arising out of and

COMPLAINT

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 4 of 29

related to the Main Case. The present action is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (C) and (O). This court has jurisdiction over this matter under Sections 157 and 1334 of Title 28 of the United States Code. To the extent applicable, Plaintiff consents to entry of final judgment by the Court on any non-core claims.

6. These claims for relief arise out of business transactions and wrongful acts taking place and/or having an intended effect in the District of Southern California. These claims for relief further allege injury to Plaintiff.

7. The Defendants have consented to jurisdiction in the District of Southern California, have purposefully availed themselves of the rights and privileges of conducting activities in San Diego, and have engaged in intentionally wrongful conduct knowing that it would have a direct and adverse impact on Debtor in the forum state. Venue is proper pursuant to the provisions of 28 U.S.C. § 1409(c).

## GENERAL ALLEGATIONS

### A. The Parties

8. Plaintiff Sargent Ranch is a California limited liability corporation with its principal place of business in San Diego County. Sargent Ranch is the owner of approximately 6,400 acres of land in Santa Cruz and Santa Clara Counties.

9. Defendant Albert J. Kralik and Linda H. Kralik are individuals and creditors of the Plaintiff.

10. Defendant A. Jeff Appleton is an individual and a creditor of the Plaintiff.

11. Defendant Arthur Appleton ("Appleton") is an individual and a former officer and director of FBF.

12. Defendant Associated Management Services, Inc. is an entity and a creditor of Plaintiff.

13. Defendant Athena Coast Holdings Limited is an entity and a creditor of Plaintiff.

14. Defendant Avilia Thompson is a limited partnership and a creditor of the Plaintiff.

15.     Defendant Barbara L. Jones is an individual and a creditor of the Plaintiff.

16.     Defendant Bernat Rosner is an individual and a creditor of the Plaintiff.

17.     Defendant Bradley D. Benson is an individual and a creditor of the Plaintiff.

18.     Defendant Bruce K. Palmer, Trustee of the Trust Agreement Dated December 30, 1982, for the benefit of Bruce Kenneth Palmer, is an individual and a creditor of the Plaintiff.

19.     Defendant Burton O. Benson ("Benson") individually and as Trustee of Discount Fabrics Profit Sharing Plan; Trustee of ERG, Inc. -- Retirement Trust, Trustee of ERG, Inc. -- BOB Retirement Trust, and Trustee of ERG - Ford Retirement Trust, is an individual and a creditor of Plaintiff.

20.     Defendant Carr Capital Partners LLC is an entity and a creditor of Plaintiff.

21.     Defendant Cavalier Corp. is an entity and a creditor of Plaintiff.

22.     Defendant Dave Wallace ("Wallace") is an individual.

23.     Defendant de Groot Charitable Remainder Trust is an entity and a creditor of the Plaintiff.

24.     Defendant Deborah S. Appleton is an individual and a creditor of the Plaintiff.

25.     Defendant Debra Gewertz is an individual and a creditor of the Plaintiff.

26.     Defendant Donald Drennan is an individual and a creditor of the Plaintiff.

27.     Defendant Elizabeth A. Doerr-Black is an individual and a creditor of the Plaintiff.

28.     Defendant Elizabeth Benson is an individual and a creditor of the Plaintiff.

29.     Defendant Enderley, Ltd. is an entity and a  creditor of Plaintiff.

30.     Defendant ERG, Inc. (aka ERG Materials & Aerospace Corp.) is an entity and a creditor of Plaintiff.

31.     Defendant Eric B. Benson is an individual and a creditor of the Plaintiff.

-6-

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 6 of 29

32.     Defendant Estate of John S. Appleton, deceased, is an entity and a creditor of the Plaintiff.

33.     Defendant First Blackhawk Corporation ("FBF") is a purported California corporation with an alleged principal place of business in Danville, California. FBF was a licensed California real estate broker. The license was revoked on or about May 12, 2010.

34.     Defendant First Blackhawk Corporation Defined Pension Benefit Plan is an entity and a creditor of Plaintiff.

35.     Defendant First Trust Corp., Trustee (FBO of Frederick E. Bussey, Acct. No. J1325760001) is an entity and a creditor of Plaintiff.

36.     Defendant Frederic Sylvester, Trustee of the Frederick and Elizabeth Sylvester Trust, dated May 19, 1990, is an individual and a creditor of the Plaintiff.

37.     Defendant Frederick Bussey is an individual and a creditor of the Plaintiff.

38.     Defendants Fredrick H. and Jacqueline Badger, Trustees are individuals and creditors of the Plaintiff.

39.     Defendant Gary Griffin, Trusteee of the Gary F. Griffin Trust, dated January 13, 1992, is and individual and a creditor of the Plaintiff.

40.     Defendant Gary F. Jones is an individual and a creditor of the Plaintiff.

41.     Defendant Gibbs Hill Insurance Company  (SAC) Ltd. is an entity and a creditor of the Plaintiff.

42.     Defendant Goldfinger Investments, Ltd. is an entity and a creditor of the Plaintiff.

43.     Defendant Gregory F. Griffin ("Griffin") is an individual, an officer and director of FBF, and a creditor of the Plaintiff.

44.     Defendant Gunilla M. Rittenhouse is an individual and a creditor of the Plaintiff.

45.     Defendants Gunther J. and Kathryn L. de Groot, Trustees of the DeGroot Living Trust U/A dated September 8, 1986 are individuals and creditors of the Plaintiff.

COMPLAINT
Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 7 of 29

46.     Defendants Ian G. and Tonya A. Koblick, Co-Trustees of the Ian G. Koblick Revocable Trust, are individuals and creditors of the Plaintiff.

47.     Defendant Jim Schreader is an individual and a creditor of the Plaintiff.

48.     Defendant Jocelyn Sylvester Herail, Trustee, Herail Family Trust, is an individual and a creditor of the Plaintiff.

49.     Defendant Kenneth I. McGill and Paulina P. McGill, individually and as Trustees of the McGill 1984 Trust, are individuals and creditors of the Plaintiff.

50.     Defendant Kurt M. Pagnini is an individual and a creditor of the Plaintiff.

51.     Defendants Lee and Francesca Wolterding are individuals and creditors of the Plaintiff.

52.     Defendant Linkup Holdings Limited is an entity and a creditor of Plaintiff.

53.     Defendant Los Amigos V, a partnership, is an entity and a creditor of Plaintiff.

54.     Defendant Louis E. Rittenhouse, individually and as Trustee opf an unknown turst, is an individual and a creditor of the Plaintiff.

55.     Defendant Martin H. Plone is an individual and a creditor of the Plaintiff.

56.     Defendant Mark D. Benson is an individual and a creditor of the Plaintiff.

57.     Defendants Mark and Linda Ragno are individuals and creditors of the Plaintiff.

58.     Defendants Martin A. Parese, Jr. and Laurie Parese are individuals and creditors of the Plaintiff.

59.     Defendant Mary B. Wilson, Trustee, Mary B. Wilson Living Trust, is an individual and a creditor of the Plaintiff.

60.     Defendant Mary Marbury Bowie is an individual and a creditor of the Plaintiff.

61.     Defendant Michael C.S. Thompson, Trustee, Michael C.S. Thompson Living Trust, dated 3/20/1995, is an individual and a creditor of the Plaintiff.

62.     Defendants Michael E. Pegler and Janice L. Pegler are individuals and

creditors of the Plaintiff.

63. Defendant Montgomery Street Partners, a general partnership, is an entity and a creditor of the Plaintiff.

64. Defendant Nailder Investments Ltd/Basel Trust Ltd. is an entity and a creditor of the Plaintiff.

65. Defendant Nerine Trust Company Limited is an entity and a creditor of the Plaintiff.

66. Defendant New Process Industries, Inc. is an entity and a creditor of the Plaintiff.

67. Defendant Norman I. Adams, IV is an individual and a creditor of the Plaintiff.

68. Defendant Patricia J Bussey, individually and as Trustee of the Patricia J. Bussey Separate Property Trust dated November 5, 1999, is an individual and a creditor of the Plaintiff.

69. Defendant Paul Pagnini, Trustee, Pagnini Family Trust dated 7/16/79, is an individual and a creditor of the Plaintiff.

70. Defendant PENSO Trust Company, Inc. (aka PENSCO Pension Services, Inc.) (FBO of Donald C. Drennan, Acct. No. DR-003; Albert J. Kralik, Acct. No. KR-081; William J. Beckett, Acct. No. BE-328; Richard H. DuBois, Acct. No. DU-101; Kathleen M. Keith, Acct. No. KE-174; Bruce K. Palmer, Acct. Nos. PA-217 and PA-222; Martin H. Plone, Acct No. PL020; Michael E. Pegler, Acct. No. PE-172; Al Wolfers, Acct. Nol. WO-160; F. James Fulton, Acct. No. FU-043) is an entity and on behalf of various persons, a creditor of Plaintiff.

71. Defendant Porter A. Hurt, Trustee of the Porter A. Hurt Living Trust, dated 10/1991, is an individual and a creditor of the Plaintiff.

72. Defendant Rawson Investments Ltd. is an entity and a creditor of Plaintiff.

73. Defendant Ricardo Pimienta is an individual and a creditor of the Plaintiff.

74. Defendants Richard R. Bruce & Susan I. Bruce, Trustees of the Richard R.

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 9 of 29

Bruce and Susan I. Bruce revocable Trust dated September 3, 2003, are individuals and creditors of the Plaintiff

75.     Defendant Richard Ehrenberger is an individual and a creditor of the Plaintiff.

76.     Defendant Richard G. Williams is an individual and a creditor of the Plaintiff.

77.     Defendant Ron Blake, Trustee of the Ethel M. Blake Trust of 1991, is an individual and a creditor of the Plaintiff.

78.     Defendants Ronald C. & Catherine M. Blake are individuals and creditors of the Plaintiff.

79.     Defendant Ronald P. Elvidge is an individual and a creditor of the Plaintiff.

80.     Defendants Russell A. and Vivien G. Bowen, individually and as Trustees of The Russell A.. & Vivien G. Bowen Trust, are individuals and creditors of the Plaintiff.

81.     Defendant Shazara Services Ltd. is an entity and a creditor of Plaintiff.

82.     Defendant Sherie Sylvester, individually and as Trustee of an unknown trust, is an individual and a creditor of the Plaintiff.

83.     Defendants Steve and Lynn Mirassou, Trustees of the Steve and Lynn Mirassou Living Trust, are individuals and a creditor of the Plaintiff.

84.     Defendants Steven S. and Kathryn A. Hallock, individually and as Co-Trustees of an unknown trust, are individuals and a creditor of the Plaintiff.

85.     Defendant Susan Ragno is an individual and a creditor of the Plaintiff.

86.     Defendant Thomas R. Leonard is an individual and a creditor of the Plaintiff.

87.     Defendants Thomas W. and Ginger C. Marckwardt, Trustees of the Marckwardt Trust dated February 15, 1994, are individuals and creditors of the Plaintiff.

88.     Defendant Trust Company of America (FBO Gary Jones, Acct. No. 24363;

-10-

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 10 of 29

FBO Barbara L. Jones, Acct. No. 25360) is an entity and a creditor of Plaintiff.

89.    Defendant V. Lea Sasak is an individual and a creditor of the Plaintiff.

90.    Defendant Victoria L. Sillivan, Trustee of the Herbert L. Sillivan and Victoria L. Sillivan Irrevocable Trust, is an individual and a creditor of the Plaintiff.

91.    Defendants W. Richard Marz and Ruthanne Marz are individuals and creditors of the Plaintiff.

92.    Defendants William E. and Alayne L. Noble, individually and as Trustees of an unknown trust, are individuals and creditors of the Plaintiff.

93.    Defendant William Mazzocco, Trustee, is an individual and a creditor of the Plaintiff.

94.    Defendants William R. & Marie A Smithousen, individually and as Trustees of an unknown trust, are individuals and creditors of the Plaintiff.

95.    Defendant World Health Associates, Inc. is an entity and a creditor of the Plaintiff.

96.    The above-referenced creditors entered into the Loans secured by deeds of trust and are collectively referred to herein as the "Lenders."

97.    On information and belief, at all relevant times, Defendants, and each of them, were authorized and empowered by the other Defendants, and each of them, to act, and they did so act, as the agent, principal, partner, and co-conspirator of the other Defendants, and each of them, and all of the things alleged to have been done by them, and each of them, were done in the capacity of and as agents, principals, partners, and/or co-conspirators of such other Defendants.

**B.    FBF Offered and Sold Illegal Syndicated Loans**

98.    Commencing in 2000, FBF and its agents solicited investments from the general public for the Loans.  For example, on August 8, 2000, FBF sent out a general solicitation for investors in the form of a "Letter of Introduction" written by Burton Benson on behalf of FBF, touting a "very attractive and secure investment", and vouching for the principals of FBF -- Art Appleton and Griffin -- as having the "highest

moral character and integrity." FBF solicited hundreds if not thousands of potential investors.

99.     From May 2000 through October 2003, FBF offered and sold a series of notes on the Property secured by deeds of trust, as follows:

a.     The First Note And Deed Of Trust.  The First Note, bearing Loan number 00417A, was in the principal amount of $15,000,000 and was dated May 31, 2000.  The First Note had 63 beneficiaries, and was secured by a first deed of trust on the Property recorded on June 12, 2000.  While FBF recorded a first deed of trust in the amount of $15 million, FBF funded only $11 million of the First Note.

b.     The Second Note And Deed Of Trust.  The Second Note, bearing Loan number 01026A, was in the principal amount of $15,000,000 and was dated November 6, 2000.  The Second Note had 6 beneficiaries, and was secured by a second deed of trust on the Property recorded on November 14, 2000.  While FBF recorded a second deed of trust in the amount of $15 million, and named itself as an owner of a 63.33% interest, FBF had not itself funded any portion of the Second Note, and had raised only $6 million from various Lenders at the time of the recordation.

c.     The Modification to the First Note And Deed Of Trust.  The First Note and first deed of trust were modified to increase the principal amount from $10,000,000 to $25,000,000 with the modification back-dated to November 13, 2000. FBF recorded an "Agreement Modifying Deed of Trust" on January 31, 2001.

d.     The Third Note And Deed Of Trust.  The Third Note, bearing Loan number 030930A, was in the principal amount of $3,000,000 and was dated October 1, 2003. The Third Note had 11 beneficiaries, and was secured by a third deed of trust on the Property recorded on October 28, 2003.

100.     The Loans were illegal because they violated California's real estate multi-lender laws, securities laws, a Desist and Refrain Order from the Department of Real Estate, and Civil Code §1670.

a.     Violations of Multi-Lender Laws.  FBF and the Lenders knew that

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 12 of 29

the Loans were in violation of California's multi-lender laws which limit fractionalized ownership in a series of notes to 10 lenders. For example, on September 18, 2000, FBF sent out a letter to Lenders stating that "we can only have a maximum of 10 investors in any multiple lender loan." FBF nonetheless proceeded with the Loans in blatant violation of the 10 person limitation, and the Lenders knowingly invested in violation of such laws.

b.    <u>Violations of Securities Laws</u>.  FBF's conduct with respect to the Loans also violated California's securities laws since FBF offered and sold the securities as an unlicensed broker-dealer in transactions that were not exempted from qualification or registration.

c.    <u>Violations of Desist and Refrain Order</u>. On April 21, 2003, the California Department of Real Estate issued an Order to Desist and Refrain ("Order") against FBF, finding that FBF "arranged, negotiated, and sold series of notes or undivided interests in notes secured by real property to more than ten persons in violation of Section 10229 of the Code, including but not limited to the following: (a) LOAN #91215a, January 21, 2000, to 34 investors; (b) LOAN #00417A, June 12, 2000, to 48 investors." The Order mandated that FBF desist and refrain from "arranging, negotiating, and selling any series of notes or undivided interests in notes secured by real property to more than ten persons in violation of Section 10229 of the Code". In brazen disregard of the Order, FBF offered and sold  (a) the Third Note in October 2003, *i.e.*, six months after the Order; and (b) an aggregate 34+% position (or approximately $8,500,000) in the First Note in or about June 2005, *i.e.*, more than two years after the Order.

d.    <u>Violations of Civil Code §1671</u>. The Notes contain provisions regarding default interest rates that are an unenforceable penalty under Civil Code §1671. The default interest rate provisions were unreasonable under the circumstances at the time of the Notes because the rates bore no reasonable relationship to the Lenders' actual damages. This is particularly true since the Lenders had no intention of allowing partial lot releases so that Plaintiff could sell or refinance portions of the Property to pay

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 13 of 29

down the Notes.

### C.   FBF Destroyed Books And Records After Misappropriating Funds

101.   FBF destroyed books and records regarding the Notes and deeds of trust. The Acting U.S. Trustee for the U.S Bankruptcy Court, Northern District of California, concluded that FBF's books and records were destroyed by FBF's CEO Griffin and that "few records exist to determine where the funds went after received by [FBF's CEO] and FBF".

102.   On October 14, 2009, the Acting U.S. Trustee filed a "Complaint to Deny Discharge" against Griffin in his Chapter 7 bankruptcy, which states as follows:

> "23.   Prior and subsequent to the bankruptcy filing, Defendant placed numerous documents of his own and that of FBF in storage units and thereafter failed to pay the storage facilities fees.
>
> 24.   Because of Defendant's failure to pay the storage fees, the Acting U.S. Trustee was unable to access the storage facilities until obtaining a court order authorizing the Acting U.S. Trustee's access and only after the contents of at least one storage unit had been placed for auction.
>
> 26.   During Defendant's 2004 examination held in May 2009, Defendant testified that there existed over 300 boxes of documents, yet only 34 boxes were discovered.
>
> 27.   Even with the discovery of 34 boxes of documents, *the Acting U.S. Trustee is unable* to determine Defendant's financial condition at the time of filing or immediately prior thereto or *to determine FBF's* or Defendant's *significant business transactions prior to the bankruptcy filing*.
>
> 28.   FBF and Defendant were involved in well over $60,000,000 of private lending transactions including Sargent Ranch, *yet few records exist to account for the funds obtained from investors or to determine where the funds went after received by Defendant and FBF*." [Emphasis added].

103.   The Acting U.S Trustee further alleged that "Defendant has either

COMPLAINT

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 14 of 29

concealed, destroyed, or failed to keep or preserve books and records…" In response, Griffin stipulated to the denial of the discharge of his Chapter 7 bankruptcy.

104.    According to the "Agreement to Procure Lender", FBF acted as the "agent for both the borrower [Plaintiff] and lender [Lenders] in arranging" the Loans. In such capacity, FBF solicited, collected, controlled and disbursed all funds raised from the Lenders for the Loans. Sargent Ranch did not even maintain a bank account.

105.    FBF misappropriated funds from Lenders that were intended for Plaintiff. For example, FBF unlawfully recorded a second deed of trust in the amount of $15 million, and designated itself as the 63.33% owner on such deed, when it had not loaned any money itself and had only raised $6 million from various Lenders. FBF's destruction of books and records related to the Loans concealed the misappropriation of all or part of the $9 million in funds raised when FBF sold its purported 63.33% interest.

### D.    **The Lenders Thwarted Sargent Ranch's Efforts To Re-Pay The Notes**

106.    Commencing in or about 2004, certain Lenders developed a scheme to prevent Plaintiff from re-paying the Notes so that the Lenders could foreclose on the Property or force a bankruptcy and demand a liquidation. The Lenders were motivated to implement this "loan to own" scheme because property values were rapidly rising and ownership of the Property became much more valuable than repayment of principal and interest. The Lenders implemented this scheme by refusing to allow Plaintiff to sell or finance portions of the Property. This scheme violated the implied covenant of good faith and fair dealing in the Notes.

107.    The parties' course of dealing and the offering documents contemplated the sale or transfer of portions of the Property.

            a.    The course of dealing between Plaintiff, FBF and certain Lenders involved individual lot releases on a prior real estate project. Plaintiff was lead to believe based on such dealings that the same practice would be implemented with respect to the Property.

b. The offering documents used by FBF to solicit Lenders for the Notes contemplated the partial sale or refinancing of the Property. Specifically, among other things, an "Executive Summary" was sent to prospective investors which referred to development of a "portion" of the Property, the establishment of an Indian Trust on "part or all of ranch", "2-acre parcels", a "150 acre Private Golf Course", a "400 acre Public Golf Course", "41 20-acre Home sites", and so on.

c. The Lenders refused to allow partial sales or refinancing of the Property so that Plaintiff could repay the Notes. Specifically, on August 5, 2005, the steering committee for the Lenders sent an email to Mike Baldridge, representative of The StoneTree Group, LLLP, wherein they rejected individual lot releases. In short, from 2005 through the filing of the Chapter 11, Plaintiff was prohibited from developing, selling or refinancing a portion of the Property to pay off its obligations, and was forced to seek the refinancing of all 6,400 acres at once, which the Lenders knew was an increasingly difficult task given contracting credit market conditions.

108. FBF assisted the Lenders' scheme by breaching the "Lender Servicing and Equity Interest Agreement" (the "Servicing Agreement") which provides that "[a] simple majority in interest of the lenders may determine and direct the actions to be taken on behalf of all lenders in the event of default or with respect to other matters requiring the direction or approval of lenders, and such majority may designate the 'COMPANY' to so act on their behalf." FBF never sought to determine the votes of a majority of Lenders, and instead took instructions from a minority group of Lenders.

109. Plaintiff is informed and believes that FBF continues to act as the servicing agent for the Lenders despite not having a valid real estate broker's license.

**E.** **The Breach Of The Non-Circumvention Agreement**

110. On August 24, 2007, Plaintiff entered into a "Confidentiality and Non-Circumvention Agreement" (the "Non-Circumvention Agreement") with Wallace regarding the procurement of funding for Plaintiff. The Non-Circumvention Agreement provides in relevant part as follows:

COMPLAINT

"Except as Owner may otherwise consent in writing, Recipient shall not, directly or indirectly, as principal, agent, partner, member, shareholder, trustee, consultant, independent contractor, broker or otherwise in any manner be affiliated or connected with, or engage or participate in any transaction or activity regarding the Property (including any transaction or activity with respect to any debt claim against or equity interest in the Owner) other than a transaction or activity expressly approved by the Owner in writing."

111.   Wallace breached the Non-Circumvention Agreement by affiliating himself with FBF, its CEO Griffin, and certain Lenders, most notably Benson and Linda Kralik, in connection with the funding of a plan with respect to the Property.  Specifically, on or about January 28, 2010, Wallace represented to Mike Baldridge that Wallace was going to be involved in Sargent Ranch "one way or another", that he was going to do a deal with the Lender group, and that he was "in it, to win it".  Plaintiff is informed and believes that Wallace also breached the Non-Circumvention Agreement by arranging funding in connection with the foreclosure by the third trust deed holders, the Chapter 11 proceedings, and a proposed restructuring by various Lenders.

## FIRST CLAIM FOR RELIEF

### (Violations of Multi-Lender Laws)

### (Against FBF and Lenders)

112.   Plaintiff realleges paragraphs 1 through 111 of this Complaint.

113.   FBF was required to comply with California's real estate multi-lender laws set forth in Business & Professions Code §10237 et seq.

114.   Business & Professions Code §10237 provides that "Any transaction that involves the sale of or offer to sell a series of notes secured directly by interests in one or more parcels of real property, or the sale of undivided interests in a note secured directly by one or more parcels of real property equivalent to a series transaction, shall comply with all of the provisions of this article."

-17-

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 17 of 29

115.     Business & Professions Code §10238(f)(1) which provides in relevant part that "The notes or interests shall not be sold to more than 10 persons, each of whom meets one or both of the qualifications of income or net worth"

116.     FBF failed to comply with §10238(f)(1) by selling the Notes and deeds of trust to more than 10 persons, and by selling to numerous persons who did not meet the income and net worth requirements.

117.     FBF violated the Order from the Department of Real Estate by selling portions of the First Note and the entirety of the Third Note after the Order had been issued.

118.     The Defendants conspired with or aided and abetted FBF by knowingly entering into the Loans in violation of express law after notice thereof.

119.     Since the Notes and deeds of trust were issued by FBF in willful violation of an express provision of law, they are void as a matter of law. See Civil Code §1667. Plaintiff requests an Order from the Court declaring the Loans and deeds of trust void as a matter of law.

## SECOND CLAIM FOR RELIEF

### (Violations of Securities Laws)

### (Against FBF and Lenders)

120.     Plaintiff realleges paragraphs 1 through 111 of this Complaint.

121.     The real estate multi-lender laws do not excuse FBF from complying with its obligations under California's securities laws.  See Business & Professions Code §10239 ( "Nothing in this article shall be construed to supersede or restrict the application of the Corporate Securities Law of 1968.  A transaction under this article shall not be construed to be a transaction involving the issuance of securities subject to authorization by the Real Estate Commissioner under subdivision (e) of Section 25100 of the Corporations Code.")

122.     FBF was acting as a "Broker-dealer" with respect to the Loans. See Corporations Code §25004(a) (a "Broker-dealer" is "any person engaged in the business

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 18 of 29

of effecting transactions in securities in this state for the account of others or for his own account.").

123.   FBF was not a licensed Broker-dealer at the time it effected the transactions with respect to the Notes.

124.   Plaintiff is entitled to rescind and hereby seeks rescission of the Loans since FBF was not a licensed Broker-dealer.  Alternatively, Plaintiff is entitled to bring an action for damages. See Corporations Code §25501.5.  Plaintiff is also entitled to attorney's fees under Corporations Code §25501.5(b).

125.    The Lenders conspired with or aided and abetted FBF by knowingly entering into the Loans in violation of express law when they either knew or should have known that FBF was not a licensed Broker-dealer.

126.   Alternatively, since the Notes and deeds of trust were issued by FBF in willful violation of an express provision of law, they are void as a matter of law. See Civil Code §1667.  Plaintiff requests an Order from the Court declaring the Loans and deeds of trust void as a matter of law.

## THIRD CLAIM FOR RELIEF

### (Violations of Civil Code §1671)

### (Against FBF and Lenders)

127.   Plaintiff realleges paragraphs 1 through 111 of this Complaint

128.   The Notes contain provisions regarding default interest rates that are an unenforceable penalty under Civil Code § 1671.

129.   The default interest rate provisions were unreasonable under the circumstances at the time of the Notes because the rates bore no reasonable relationship to the Lenders' actual damages.

130.   This is particularly true since the Lenders had no intention of allowing partial lot releases so that Plaintiff could pay down the Notes.

131.   Pursuant to Civil Code §1671(b), the default interest rate provisions of the Notes are invalid and unenforceable.

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 19 of 29

132.    Plaintiff requests an Order from the Court declaring the default interest rate provisions are void as a matter of law.

## FOURTH CLAIM FOR RELIEF

### (Violations of Equitable Subordination: Bankruptcy Code §510)

### (Against FBF and Lenders)

133.    Plaintiff realleges paragraphs 1 through 111 of this Complaint

134.    The Notes are void and unenforceable as a result of violations of real estate multi-lender laws, securities laws, and the Order from the Department of Real Estate.

135.    As a result, the claims of the Lenders are subordinated to "all claims or interests that are senior to or equal the claim or interest represented by such security" pursuant to Bankruptcy Code §510 (b).

136.    Furthermore, the claims of the Lenders are equitably subordinated pursuant to Bankruptcy Code §510 (c) in view of the Lenders' gross misconduct consisting of knowing participation in the illegal Loans and bad faith refusal to allow individual lot releases so that Plaintiff could sell or refinance portions of the Property to pay down the Notes.

137.    Plaintiff requests an Order from the Court subordinating the Lenders claims.

## FIFTH CLAIM FOR RELIEF

### (Breach Of Implied Covenant Of Good Faith And Fair Dealing)

### (Against FBF and Lenders)

138.    Plaintiff realleges paragraphs 1 through 111 of this Complaint

139.    To the extent that the Notes are legally binding contracts, and are not null and void for illegality, there is an implied covenant of good faith and fair dealing in the Notes which requires that the Lenders do nothing to hinder Plaintiff's ability to repay the Notes.

140.    The Lenders breached the implied covenant of good faith and fair dealing by refusing to allow Plaintiff the opportunity to sell or finance a portion of the Property to repay the Notes, and by instead demanding that Plaintiff sell or refinance the entire

-20-

COMPLAINT

Property.

141.    The Lenders intended to prevent and in fact prevented Plaintiff from repaying the Notes in order that the Lenders could foreclose and/or force a bankruptcy and demand a liquidation.

142.    As a direct, proximate and foreseeable result of the Lenders' breach, Plaintiff was unable to repay the Notes, was forced to file for Chapter 11, and has sustained damages of at least $30 million, in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (Against FBF and Lenders)

143.    Plaintiff realleges paragraphs 1 through 111 of this Complaint.

144.    According to the "Agreement to Procure Lender", FBF acted as "agent for both the borrower and lender in arranging" the Loans.

145.    As the agent for Plaintiff, FBF owed a fiduciary duty (a) to procure funding that complied with California law, (b) distribute the funding for the benefit of Plaintiff, and (c) service the loans in accordance with California law.

146.    FBF's fiduciary duties to Plaintiff are in no way limited by California's multi-lender laws.  See Business & Professions Code §10239.1  ("Nothing in this article shall be construed to change the agency relationships between the parties where they exist or limit in any manner the fiduciary duty of brokers to borrowers, lenders, and purchasers of notes or interests in transactions subject to this article.").

147.    FBF breached its fiduciary duties as follows:

(a)    FBF violated real estate multi-lender laws;

(b)    FBF violated securities laws;

(c)    FBF violated the Order from the Department of Real Estate;

(d)    FBF violated Civil Code §1670;

(e)    FBF and the Lenders devised and implemented a "loan to own" scheme;

COMPLAINT

(f)     FBF and its agents misappropriated funds;

(g)     FBF willfully destroyed books and records.

148.     The Lenders aided and abetted FBF's breaches of its fiduciary duties by knowingly entering into transactions in violation of the law, by participating in the "loan to own" scheme, and by refusing to allow Plaintiff the opportunity to sell a portion of the Property so that it could pay down the Notes.

149.     As a direct and proximate result of the foregoing breach of fiduciary duties, Plaintiff has sustained damages of at least $30,000,000, in an amount to be proven at trial

150.     Defendants' actions were willful and malicious, were motivated solely out of their own greed, and were in conscious disregard for the rights of Plaintiff.  Plaintiff is therefore entitled to the imposition of punitive damages to punish the Defendants, set an example, and deter similar future conduct.

## SEVENTH CLAIM FOR RELIEF

### (Breach Of Contract)

### (Against Wallace)

151.     Plaintiff realleges paragraphs 1 through 111 of this Complaint.

152.     Plaintiff and Wallace entered a valid and enforceable Non-Circumvention Agreement.

153.     Wallace breached the agreement by affiliating himself with FBF, its CEO Griffin, and certain lenders, most notably Burton Benson and Linda Kralik, in connection with the funding of a plan with respect to the Property.

154.     Wallace also breached the Non-Circumvention Agreement by arranging funding in connection with the foreclosure by the third trust deed holders, the Chapter 11 proceedings, and a proposed restructuring by various lenders.

155.     Plaintiff requests that the Court enter an injunction prohibiting Wallace and his funding sources from participating in the funding of any plan with respect to the Property.

///

# EIGHTH CLAIM FOR RELIEF

## (Fraud)

## (Against All Defendants)

156. Plaintiff realleges paragraphs 1 through 111 of this Complaint.

157. FBF, Griffin, Appleton failed to disclose to Plaintiff the following material facts:

        (a)    The Loans violated real estate multi-lender laws;

        (b)    The Loans violated securities laws;

        (c)    The Loans violated the Order from the Department of Real Estate;

        (d)    The Loans violated Civil Code §1670;

        (e)    FBF and the Lenders intended to implement a "loan to own" scheme;

        (f)    FBF, Griffin and Appleton intended to and misappropriated funds;

        (g)    FBF willfully destroyed books and records.

158. Wallace failed to disclose the material fact that he intended all along to violate the Non-Circumvention Agreement.

159. The Lenders conspired with or aided and abetted FBF, Griffin and Appleton by knowingly entering into Loans and deeds of trust in violation of California law.

160. Plaintiff relied to its detriment on the foregoing non-disclosures or concealments. Had Plaintiff known the truth, Plaintiff would not have done business with FBF or Wallace.

161. As a direct and proximate result of the foregoing failures to disclose or fraudulent concealments, Plaintiff has sustained damages of at least $30,000,000, in an amount to be proven at trial

162. Defendants' actions were willful and malicious, were motivated solely out of their own greed, and were in conscious disregard for the rights of Plaintiff. Plaintiff is therefore entitled to the imposition of punitive damages to punish the Defendants, set an example, and deter similar future conduct.

COMPLAINT

Case: 10-04400   Doc# 1   Filed: 09/27/10   Entered: 12/16/10 16:35:10   Page 23 of 29

## NINTH CLAIM FOR RELIEF

### (Conversion)

### (Against FBF, Griffin and Appleton)

163. Plaintiff realleges paragraphs 1 through 111 of this Complaint

164. FBF, Griffin and Appleton converted proceeds from the Loans for their own personal use when such funds were intended for Plaintiff.

165. As a direct and proximate result of the conversion, Plaintiff has sustained damages in an amount to be proven at trial.

166. Alternatively, Plaintiff seeks an order of disgorgement of any consideration received by Defendants which was intended for Plaintiff.

167. Defendants' actions were willful and malicious, were motivated solely out of their own greed, and were in conscious disregard for the rights of Plaintiff. Plaintiff is therefore entitled to the imposition of punitive damages to punish the Defendants, set an example, and deter similar future conduct.

## TENTH CLAIM FOR RELIEF

### (Negligence)

### (Against FBF)

168. Plaintiff realleges paragraphs 1 through 111 of this Complaint.

169. As a mortgage broker and the originator of the Loans, FBF owed Plaintiff a duty of care.

170. FBF breached its duty of care by engaging in negligent or reckless conduct, including but not limited to (a) advertising loan transactions that contemplated individual lot releases but failing to ensure that intent was explicitly set forth in the notes or deeds of trust; (b) effecting transactions that failed to comply with California law; (c) failing to properly record interests in the loans and deeds of trust; (d) failing to adhere to instructions from a simple majority of fractionalized interest owners; (e) failing to maintain books and records; (f) failing to properly account for use of funds; and (g) failing to properly distribute funds or the consideration for such funds.

COMPLAINT

171. As a direct and proximate result of such breaches, Plaintiff has sustained damages of at least $30,000,000, in an amount to be proven at trial.

## ELEVENTH CLAIM FOR RELIEF

### (Declaratory Relief)

### (Against Lenders)

172. Plaintiff realleges paragraphs 1 through 111 of this Complaint.

173. Based on the foregoing, there exists an actual controversy as to the legal rigths and duties between Plaintiff and the Lenders with respect to the nature and extent of the Lenders' interests in the Property.

174. Because of the dispute that has arisen, Plaintiff seeks a judicial determination pursuant to 28 U.S.C. 2201(a) and Rule 57 of the Rules of Federal Civil Procedure, and is entitled to a declaratory judgment with respect to the following:

      a.   Whether the Lenders have any interest in the Property;

      b.   Whether the Lenders have a legal or equitable interest in the Property;

      c.   Whether the Lenders have a secured interest in the Property;

      d.   The amount of each Lender's interest in the Property;

      d.   Whether the Lenders are entitled to interest payments;

      e.   The amount of interest payments each Lender is entitled to.

## TWELFTH CLAIM FOR RELIEF

### (Set-off)

### (Against Lenders)

175. Plaintiff realleges paragraphs 1 through 111 of this Complaint.

176. Plaintiff is entitled to reduce or set-off the Lenders' claims against Plaintiff as determined by the Court with the amount of damages awarded to Plaintiff against the Lenders.

///
///
///

COMPLAINT

Case: 10-04400    Doc# 1    Filed: 09/27/10    Entered: 12/16/10 16:35:10    Page 25 of 29

# **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests judgment against the Defendants, as follows:

1.  For an Order declaring the Loans and deeds of trust void as a matter of law;

2.  For an Order declaring that the Lenders do not have secured interests;

3.  For an Order subordinating the Lenders' claims;

4.  For compensatory damages according to proof, plus prejudgment interest thereon at the legal rate;

5.  For punitive and exemplary damages;

6.  For an injunction against Wallace and his affiliates;

7.  For an Order of disgorgement against FBF, Griffin and Appleton;

8.  For costs of suit incurred herein, including reasonable attorneys' fees;

9.  For pre-judgment interest; and

10. For such other and further relief as the Court deems proper.

///
///
///
///
///
///
///
///
///
///
///
///

-26-

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Date:  September 23, 2010          SMAHA LAW GROUP


                                   //s//  John Smaha
                                   _____
                                   JOHN SMAHA
                                   Attorneys for Debtor, SARGENT RANCH,
                                   LLC

Date:  September 23, 2010          AFFELD GRIVAKES ZUCKER LLP


                                   //s//  Christopher Grivakes
                                   _____
                                   CHRISTOPHER GRIVAKES
                                   Special Litigation Counsel for Plaintiff,
                                   SARGENT RANCH, LLC
                                   (Application pending)

COMPLAINT

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Sargent Ranch, LLC | DEFENDANTS<br><br>First Blackhawk Financial Corp., a corporation, et al. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>John L. Smaha, Esq.<br>SMAHA LAW GROUP<br>7860 Mission Center Court, Ste. 100<br>San Diego, CA 92108<br>(619) 688-1557 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | ☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor    ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Complaint for Rescission, Damages, Punitive Damages, Disgorgement, Injunctive Relief, Declaratory Relief:**
1. Violations of Real Estate Multi-Lender Laws (B&P Code §10238(f)(1); 2. Violations of Securities Laws (Corp. Code §25501.5); 3. Violations of Civil Code §1671; 4. Equitable Subordination (Bankruptcy Code §510); 5. Breach of Implied Covenant of Good Faith and Fair Dealing; 6. Breach of Fiduciary Duty; 7. Breach of Contract; 8. Fraud; 9. Conversion; 10. Negligence; 11. Declaratory Relief; and 12. Set-Off

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☒ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) -- Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☒ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☒ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $165,000,000 |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| NAME OF DEBTOR<br><br>SARGENT RANCH, LLC | BANKRUPTCY CASE NO.<br><br>10-00046-PB11 |
| DISTRICT IN WHICH CASE IS PENDING<br><br>Southern District of California | DIVISIONAL OFFICE |  NAME OF JUDGE<br><br>Peter W. Bowie |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|
| /s/ John L. Smaha |

| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |
|---|---|
| September 27, 2010 | John L. Smaha, Esq. |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.